UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
:
MANUEL MADRID,                                               :
                                                             :
                                    Petitioner,              :    MEMORANDUM AND ORDER
                                                             :
            -against-                                        :    08-cv-4397 (ENV)(CLP)
                                                             :
ROBERT ERCOLE, Superintendent of                             :
Greene Haven Correctional Facility,                          :
                                                             :
                                    Respondent.              x
------------------------------------------------------------

VITALIANO, D.J.

*Pro se* petitioner Manuel Madrid filed, on March 24, 2011, a 28 U.S.C. § 2254 petition for a writ of habeas corpus. For the reasons stated below, the writ is denied and the petition is dismissed with prejudice.

## Background

On September 20, 2004 petitioner shot four men, killing one and injuring the other three.[1] Shortly thereafter police arrested petitioner, a Spanish-speaker who speaks limited English, and transported him to the 103rd precinct. Madrid waived his *Miranda* rights and gave both oral and written confessions through an interpreter. Madrid was charged with two counts of second degree murder, three counts of second degree attempted murder, six counts of first degree assault, three counts of first degree reckless endangerment, second degree criminal possession of a weapon and third degree criminal

---

[1] Because Madrid was convicted, the Court recites the facts in the light most favorable to the verdict. *See Garbutt v. Conway*, 688 F.3d 79, 80 (2d Cir. 2012).

1

possession of a weapon. Following his trial, on March 14, 2006, a Queens County jury convicted him of murder in the second degree and all but one of the various lesser charges. Madrid was sentenced to concurrent prison terms of 21 years to life on the second degree murder conviction and 20 years for the second degree attempted murder and first degree assault convictions. Madrid was further sentenced to 15 years for his second degree weapons conviction and seven years on his third degree weapons conviction, to be served concurrently with each other but consecutively to the murder and attempted murder sentences.

On direct appeal, Madrid advanced four arguments: (1) the police lacked reasonable suspicion to pursue him prior to arrest, (2) his confession should have been suppressed because he did not understand enough English to comprehend his *Miranda* rights, (3) the court illegally imposed consecutive sentences, and (4) the trial court improperly usurped the role of the jury in making certain findings of fact upon which it based its sentence. On June 3, 2008 the appellate division, second department affirmed the judgment of conviction on all counts. The Court of Appeals denied Madrid leave to appeal on September 30, 2008. He then made his application to this Court for a writ of habeas corpus on October 22, 2008. On January 28, 2009, Madrid initiated a series of collateral state proceedings to exhaust his state-level remedies, and, at Madrid's request, the Court stayed these proceedings on July 27, 2009. (Dkt. No. 11).

While the instant petition was stayed, petitioner pursued a variety of collateral attacks on the adequacy of both his trial counsel and appellate counsel. First, on January 28, 2009 petitioner filed a motion in Queens Supreme Court seeking to vacate the

judgment pursuant to CPL § 440.10 on the ground that that his trial counsel was ineffective in failing to object to the introduction of testimony by Dr. Henry Nields, an expert in forensic pathology. Supreme Court found that petitioner's claim was procedurally barred and the Appellate Division granted leave but, upon considering the appeal, affirmed.

Next, by motion dated June 10, 2009 petitioner sought a writ of error *coram nobis*, claiming that he was denied effective assistance of appellate counsel for two reasons. First, he contended that his counsel should have—but did not—argue that his trial counsel was ineffective for not objecting to the admission of Dr. Nields' testimony. Second, he contended that counsel failed to argue that his trial counsel was ineffective for not objecting to the trial judge's disclosure of a jury note revealing that the jury had not yet reached a unanimous verdict. On December 1, 2009, the Second Department denied petitioner's application for the writ, and the Court of Appeals denied leave to appeal on April 2, 2010.

On November 20, 2009 petitioner filed a second CPL § 440.10 motion in Supreme Court seeking to vacate the judgment of conviction. Madrid contended this time that his trial counsel was ineffective in failing to advise him (1) that he had the right to testify at a pre-trial suppression hearing, and (2) that, if convicted on all counts, he could be sentenced to a minimum term of incarceration exceeding 25 years. On March 5, 2010, Supreme Court denied petitioner's motion, holding that his claims were not supported by any evidence and, in fact, were contradicted by a sworn affidavit submitted by trial counsel. On September 13, 2010, the Appellate Division denied leave to appeal.

At that point, Madrid returned to federal court and his federal habeas case was reopened on March 1, 2011. About three weeks later, on March 24, Madrid filed an amended habeas petition. Madrid's amended petition asserts that his trial counsel and appellate counsel were both constitutionally ineffective in two ways. With respect to his trial counsel, Madrid claims that counsel failed to advise him about his right to testify at the pre-trial suppression hearing and also failed to advise him that his conviction could result in a sentence of over 25 years. Petitioner additionally complains that his appellate counsel failed to raise the issues of Dr. Nields' testimony and the trial judge's disclosure of the jury note.

With proceedings on the amended petition underway, Madrid sought to open yet another front. On June 18, 2012, he asked the Court for a second stay to permit him to exhaust a new claim of ineffective assistance of counsel in a third § 440.10 application. In a Memorandum & Order dated December 6, 2012, the Court denied a second stay (See Dkt. #30, 2012 WL 6061004), concluding that (a) Madrid's first amended petition was not a "mixed" petition because all of Madrid's claims were exhausted, and (b) any new claim that Madrid sought to add in a second amended petition would be barred by the applicable limitations period of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The Court further concluded that Madrid had failed to demonstrate good cause for his failure to exhaust and that his new ineffective assistance of counsel claim (failure to advise him to roll the dice and make a naked plea to second degree murder, rather than either accept the People's offered bargain or go to trial) was plainly

meritless.[2]

## Standard of Review

This petition, as noted earlier, is governed by AEDPA, which provides that a federal writ of habeas corpus may not be granted to a state prisoner held subject to the judgment of a state court unless "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000) (citation omitted). Clearly established federal law "'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" *See Carey v. Musladin*, 549 U.S. 70, 74, 127 S. Ct. 649, 653 (2006) (*quoting Williams*, 529 U.S. at 412, 120 S. Ct. at 1523). To be "clearly established" under AEDPA, federal law must be "law that is 'dictated by [Supreme Court] precedent existing at the time the defendant's conviction became final.'" *McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003) (citation omitted). A state court's "unreasonable application" of law must have been more than "incorrect or erroneous"; it must have been "objectively unreasonable." *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) (internal quotation omitted). This is a highly deferential standard, as § 2254(d) "demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005). "If this standard is difficult to meet—and it is—that is because it was meant to be." *Burt v.*

---

[2] Madrid requested a third stay of the proceedings on October 25, 2013. For the reasons discussed, *supra* at 4-5, that motion is denied. The merits of petitioner's arguments are considered here in the context of all proceedings commenced in state court that petitioner has brought to the Court's attention regardless of when those state proceedings were actually commenced by petitioner.

5

*Titlow*, 2013 WL 5904117, at *4 (2013) (internal citations omitted). Federal courts should not "lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas review is the remedy." *Id.*

To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-part inquiry set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. But, there is, of course, "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that 'there are countless ways to provide effective assistance in any given case' and that 'even the best criminal defense attorneys would not defend a particular client in the same way.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (*quoting Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065). Second, a petitioner must "affirmatively prove prejudice," demonstrating that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693-94, 104 S. Ct. at 2067-68). Where ineffective assistance in the sentencing context is alleged, the prejudice prong of *Strickland* requires a showing of a reasonable probability that, but for counsel's ineffectiveness, the sentence imposed would have been different. *See United States v. Workman*, 110 F.3d 915, 920 (2d Cir. 1997); *McNaught v. United States*, 646 F. Supp. 2d 372, 378 (S.D.N.Y. 2009).

## Discussion

I. <u>Trial Counsel</u>

Madrid contends that his trial counsel, Michael Siff, was ineffective for two

reasons: first, for failing to call him to testify at a pre-trial suppression hearing, and, second, for allegedly failing to inform him that he could face a sentence of more than 25 years if convicted. Both of these claims were considered by the state courts on their merits and rejected. Those conclusions of the state courts are entitled to substantial deference under § 2254(d).

As an initial matter, the record demonstrates that counsel's overall performance in this trial was more than adequate. Counsel filed numerous pre-trial motions, including motions to inspect grand jury minutes, to dismiss the charges as unsupported by evidence, for suppression of the identification of Madrid by an eyewitness and for suppression of his statements to police. Counsel's performance at trial continued to be more than acceptable: counsel made a *Sandoval* application, he argued that the prosecution should not be allowed to introduce evidence of petitioner's gang membership, and he successfully prevented the introduction of evidence showing that petitioner was found guilty of fighting on three occasions while under the supervision of the Department of Correctional Services. Finally, counsel vigorously challenged the introduction of scientific evidence and gave coherent opening and closing statements. In short, counsel's performance at trial was anything but deficient.

Turning to the specific deficiencies or inadequacies that Madrid alleges, they are simply quibbles with reasonable strategic decisions made by competent trial counsel. Although counsel did not call Madrid to testify at the pre-trial hearing, the record shows that counsel vigorously represented petitioner's best interests at this hearing. In particular, counsel disputed that Madrid's knowledge of English was sufficient to

7

understand *Miranda* warnings given to him in English; he challenged the suggestiveness of the identification process; and he challenged police conduct in pursuing Madrid and in the resulting recovery of his handgun. Most damaging of all, decisively, the record reflects that counsel submitted a sworn affidavit representing that he and petitioner jointly agreed that petitioner would not testify at the pre-trial hearing because he "would not make a good witness and his testimony would allow the prosecutor the ability to cross-examine him on a wide range of issues." (Siff Affirmation ¶¶ 6-8.) Counsel's sworn affidavit further stated that he "advised [Madrid] that he had the right to testify on his own behalf, both at the hearings and at the trial" but that "[i]n order to preserve issues for trial strategy, [Madrid] agreed that it was best for him to remain silent at the hearing." (Id.) Bluntly, the Siff affidavit is powerful evidence that Madrid's after-thought claim to the contrary is bogus.

Madrid's contention that Siff failed to advise him of the potential for a sentence of greater than 25 years is similarly unavailing. Indeed, Siff's sworn affidavit states that "[t]here is absolutely no doubt in my mind that I explained to [Madrid] that he was facing a possible sentence of 115 to life," and, in fact, that he had advised petitioner to accept a plea offer of 18 years. (Id. ¶ 8.) Not surprisingly, the state court, confronted with these facts, concluded that Madrid's allegations regarding ineffective assistance of trial counsel were "not supported by any evidence or affidavit by anyone other than the defendant's self-serving allegations." (March 5, 2010 decision at 2.) Madrid offers nothing here to budge the evidentiary meter. The state court's decision that trial counsel provided Madrid with constitutionally adequate representation was, it is abundantly plain, not

8

contrary to clearly established federal law such that it would surmount the substantial deference that the Court is required to apply. *Bell* at 455.[3] The writ may not issue on this ground.

## II. Appellate Counsel

In a similar vein, Madrid contends that his appellate counsel was constitutionally ineffective in two ways: first, for not arguing that the trial judge's disclosure of a jury note was improper; and, second, for not arguing that his trial counsel was ineffective for failing to object to Dr. Nields' testimony on *Crawford* grounds. The state court rejected both arguments on the merits.

It is well-engrained that appellate counsel does not have a duty to raise every colorable claim on appeal on the peril of being found ineffective. *Dupont v. Phillips*, 2012 U.S. Dist. LEXIS 88511, at *54 (E.D.N.Y. 2012) ("[A] criminal defendant has no constitutional right to make appellate counsel raise every nonfrivolous issue requested by a client.") In fact, appellate counsel is entitled to exercise discretion in determining which arguments present the appellant with the best opportunity to achieve a favorable result on appeal. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Moreover, "[d]ue to the difficulties inherent in an analysis that requires adopting counsel's perspective and then rendering an after-the-fact assessment of performance, courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Holmes v. Bartlett*, 810 F. Supp. 550, 561 (S.D.N.Y. 1993).

---

[3] Because the Court concludes that petitioner's trial counsel was not ineffective, it need not reach the second prong of the *Strickland* test.

Madrid's appellate counsel advanced three principal arguments on appeal. First, that the police lacked reasonable suspicion to pursue petitioner and, as a consequence, that petitioner's statements upon arrest should have been suppressed as fruit of an unlawful arrest. Second, that petitioner's statements to police were involuntary due to his lack of understanding of the English language. Finally, that the trial court illegally imposed consecutive sentences. Although the state court rejected these arguments, appellate counsel's determination that these arguments presented Madrid with the greatest probability of success is entitled to deference. *Holmes* at 561.

In any event, there is no reason to believe that either of the arguments that petitioner contends appellate counsel should have advanced would have been successful. With respect to the trial judge's alleged disclosure of the contents of a jury note—to the jury—indicating that a verdict had not yet been reached, obviously, the jury would have already been aware prior to the note's disclosure that they had not yet reached a unanimous decision. Disclosure, if it can be called that, of the jury's status of deliberations to the jury (or anyone for that matter) could be nothing other than harmless. Viewed without limitation, this assignment of error is essentially frivolous. Correspondingly, on habeas review, the Court concludes that the state court reasonably concluded that appellate counsel's decision not to pursue this argument on direct appeal could in no way support a claim that appellate counsel was constitutionally ineffective.

Petitioner's other challenge concerning appellate counsel's decision not to raise an issue with regard to his trial counsel's failure to object to the admission of Dr. Nields's testimony—which was based on an autopsy report prepared by a different medical

examiner—on *Crawford* grounds also cannot carry the day. Madrid emphasizes on this argument the Supreme Court's determination in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), which clarified that laboratory reports are testimonial under *Crawford*. Specifically Madrid contends: (1) *Crawford* mandates that he should have been given the right to confront the medical examiner who performed the autopsy, (2) his trial counsel's failure to pursue this option was grave error, and (3) appellate counsel's failure to highlight trial counsel's failure rendered appellate counsel's representation constitutionally inadequate.

Petitioner's argument is unavailing. Under *Crawford*—which was the controlling federal case law both at the time of Madrid's trial in 2006 and during his direct appeal in 2007-2008—petitioner's inability to cross-examine the medical examiner who actually prepared the autopsy unquestionably did not violate the Confrontation Clause. *See Crawford v. Washington*, 541 U.S. 36, 52 (2004); *People v. Freycinet*, 41 A.D.3d 731 (2007). Moreover, the Second Circuit has held that, even after *Melendez-Diaz*, routine autopsy reports such as the one at issue here remain non-testimonial and therefore experts such as Dr. Nields may rely on them to testify notwithstanding the fact that the autopsy-perfomer himself is not cross-examined at trial. *United States v. James*, 712 F.3d 79, 89-90, 99 (2d Cir. 2013). In short, appellate counsel had no obligation to raise what would have been a meritless *Crawford* claim both at the time of Madrid's appeal as well as today. *See McCoy v. United States*, 707 F.3d 184, 188 (2d Cir. 2013) ("[A]n attorney is not required to forecast changes or advances in the law in order to provide effective assistance.") In sum, the performance of Madrid's appellate counsel was entirely adequate and Madrid's

contention to the contrary is without merit.

## Conclusion

For the reasons stated above, Madrid's application for a writ of habeas corpus is denied with prejudice and the petition is dismissed.

Since Madrid has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2014

ERIC N. VITALIANO
United States District Judge