UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.

★ DEC 02 2015

BROOKLYN OFFICE

-------------------------------------------------- x

MANUEL MADRID,                          :

                    Petitioner,         :

        -against-                       :

ROBERT ERCOLE, *Superintendent of*      :
*Green Haven Correctional Facility,*    :

                    Respondent.         :

-------------------------------------------------- x

MEMORANDUM & ORDER

08-CV-4397 (ENV)

VITALIANO, D.J.

Petitioner Manuel Madrid, proceeding *pro se*, filed, on March 24, 2011, a 28 U.S.C. §

2254 petition for a writ of *habeas corpus*, which was dismissed by this Court with prejudice.

The order dismissing the petition was vacated on appeal and the matter was remanded to permit

consideration of additional arguments that petitioner had raised but were not formally presented

on the Court's initial review. For the reasons set forth below, upon full reconsideration, the writ

is denied and the petition is dismissed with prejudice.

## Background[1]

Madrid challenges his 2006 convictions for second degree murder, second degree

attempted murder, first degree assault, second degree criminal possession of a weapon, and third

degree criminal possession of a weapon. In his amended *habeas* petition, Madrid raises six

grounds for relief: (1) he was unlawfully arrested; (2) he did not waive his *Miranda*[2] rights; (3)

he was wrongfully given a consecutive sentence for his weapons convictions; (4) he was denied

---

[1] The Court presumes the parties are familiar with the procedural history and factual background
of this case, and will not needlessly repeat either here.

[2] *United States v. Miranda*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

1

effective assistance of trial counsel because counsel did not object to the testimony of the medical examiner; (5) he was denied effective assistance of appellate counsel because counsel did not object to the disclosure of a jury note or to trial counsel's failure to object to the medical examiner's testimony; and (6) he was denied effective assistance of trial counsel because he was not advised that he could testify at the suppression hearing or that he could face a sentence exceeding 25 years. (Am. Pet., ECF No. 19, at ¶ 13).

In its original decision dismissing Madrid's petition, *Madrid v. Ercole (Madrid I)*, No. 08-CV-4397 (ENV), 2014 WL 1338719 (E.D.N.Y. Mar. 31, 2014), the Court found that "the record demonstrates that counsel's overall performance in this trial was more than adequate." *Id.* at *7. The Court rejected Madrid's ineffective assistance claims against his trial counsel for: (1) not calling him to testify at a pre-trial suppression hearing; and (2) not advising that he could face a sentence exceeding 25 years, because, as the Court pointed out then, Madrid's claims about his trial counsel were entirely contradicted by the record and, simply, "bogus." *Id.* at *6-9. The Court similarly dismissed Madrid's claims that his appellate counsel was ineffective for: (1) not arguing that the trial judge improperly disclosed the jury note; and (2) not arguing that trial counsel was ineffective for failing to object to testimony of the medical expert, Dr. Nields, on *Crawford*[3] grounds. *Id.* at *9-10. The jury note "disclosure," at best, was harmless, and Madrid's assignment of error was "essentially frivolous." *Id.* at *10. In dismantling the underlying merits of Madrid's *Crawford* objection, the Court effectively determined that appellate counsel could not have been ineffective because trial counsel was not ineffective on the claimed grounds—Madrid's underlying *Crawford* objection, even with the changes brought on

---

[3] *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

by *Melendez-Diaz*[4], was meritless, and neither trial nor appellate counsel had a duty to raise that meritless objection. *Id.* at *11-12.

In the first go-round, the Court did not address the other grounds for relief asserted in Madrid's amended petition because he never briefed them. The failure to brief a claim is ordinarily accepted as a sign of abandonment, *Bajramaj v. Gonzales*, 239 F. App'x 690, 691 (2d Cir. 2007), but not in the case of a *pro se* petitioner seeking *habeas* relief, *see Joyce v. Martuscello*, No. 11-CV-5265 (LBS), 2012 WL 4219615, at *4 (S.D.N.Y. Sept. 20, 2012); *Alava v. Artuz*, No. 96-CV-8968 (WK), 1999 WL 1006178, at *4 n.11 (S.D.N.Y. Nov. 5, 1999). The mandate on remand directs that these other grounds, specifically, be addressed, which includes Madrid's claims that "he was unlawfully arrested, that his statements to police were involuntary [and improperly used against him], that his sentence violated *Apprendi v. New Jersey*, 530 U.S. 466[, 120 S. Ct. 2348, 147 L. Ed. 2d 435] (2000), and that he received ineffective assistance of counsel when his trial attorney failed to raise a hearsay exception." (Mandate of USCA, Aug. 14, 2014, ECF No. 40). Upon reconsideration, as to the grounds for relief addressed in its original decision, the Court adheres to its prior determination. The Court now addresses the supplemental grounds advanced by Madrid.

## Standard of Review

Even on remand, Madrid's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that a federal writ of *habeas corpus* may not be granted to a prisoner held subject to the judgment of a state court unless "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially

---

[4] *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 305, 174 L. Ed. 2d 314 (2009).

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) (citation omitted). Clearly established federal law "'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" *Carey v. Musladin*, 549 U.S. 70, 74, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006) (quoting *Williams*, 529 U.S. at 412). To be "clearly established" under AEDPA, federal law must be "law that is 'dictated by [Supreme Court] precedent existing at the time the defendant's conviction became final.'" *McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003) (quoting *Williams*, 529 U.S. at 381). A state court's "unreasonable application" of law must have been more than "incorrect or erroneous"—it must have been "'objectively unreasonable.'" *Sellan v. Kuhlman*, 261 F.3d 303, 314-15 (2d Cir. 2001) (citing *Williams*, 529 U.S. at 409). Although a *pro se habeas* petitioner's submissions must be construed liberally by a court to raise the strongest arguments they suggest, *see McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999), the reviewing court must still apply a highly deferential standard, as § 2254(d) "demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455, 127 S. Ct. 847, 160 L. Ed. 2d 881 (2005) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002)). "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Burt v. Titlow*, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)). Federal courts should not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas review is the remedy." *Id.* (quoting *Harrington*, 562 U.S. at 102).

Discussion

I.     Unlawful Arrest

Madrid claims that he was "illegally seized when the [p]olice pursued and stopped [him] on the basis of a meager description." (Am. Pet. at ¶ 13). In his supporting memoranda, he adds that he was not afforded a full opportunity to litigate this claim, and contends that the state court wrongfully admitted the gun that he discarded while being pursued by police into evidence, along with his statements, as the poisonous fruit of an unlawful arrest. (Petr.'s Am. Br., ECF No. 43, at 12-13; Petr.'s Reply Br., ECF No. 48, at 5-6). Respondent argues that Madrid's unlawful arrest claim must fail because it "has been fully reviewed in state court," and, therefore, "a federal court has no authority to review" it in a *habeas* proceeding. (Resp.'s Br., ECF No. 45, at 39). Petitioner, respondent presses on, "had a complete opportunity to litigate this issue at a pre-trial suppression hearing," and he "relitigated the [trial court's] adverse decision and challenged the suppression court's ruling on [] direct appeal." (*Id.* at 41-42). Sharpening the point, respondent argues that, notwithstanding whether the state courts reached the wrong conclusion, "an erroneous suppression decision is not reviewable on *habeas* review so long as the issue was fully and fairly litigated." (*Id.* at 43). Shoring up his position, respondent expresses confidence that both the appellate and trial courts properly determined that the police had the requisite reasonable suspicion for the forcible seizure, as is evident from the surplus of evidence in the record. (*Id.* at 44-46).

Putting aside the State's misapprehension of the difference between a federal *habeas* court's power to review as opposed to vacate a state court judgment of conviction, Madrid's contentions as to the lawfulness of his arrest are without merit. Setting to one side that the record is brimming with evidentiary support for the state courts' determinations, Madrid, more

5

significantly at this juncture, had ample opportunity to fully litigate his constitutional objection

to his arrest in state proceedings. "[W]here the State has provided an opportunity for full and fair

litigation of a Fourth Amendment claim, a [petitioner] may not be granted federal *habeas corpus*

relief on the ground that evidence obtained in an unconstitutional search or seizure was

introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037, 49 L. Ed. 2d 1067

(1976). The record unequivocally demonstrates that Madrid fully litigated his objection at the

suppression hearing, on his direct appeal to the Appellate Division, and on his request to appeal

that decision to the New York Court of Appeals. *People v. Madrid (Madrid II)*, 52 A.D.3d 530,

859 N.Y.S.2d 717 (2d Dep't 2008), *leave to appeal denied by* 11 N.Y.3d 790, 896 N.E.2d 103

(2008). As laid out in the record, after the hearing court rejected Madrid's Fourth Amendment

claims, *People v. Madrid (Madrid III)*, No. 1872/03 (N.Y. Sup. Ct., Queens Cnty., Oct. 12,

2005), the Second Department, on direct appeal, found that his contention that he was seized

without reasonable suspicion was meritless. *Madrid II*, 52 A.D.3d at 531.

There are two exceptions to *Stone*: "(1) where the state provides no corrective process at

all for Fourth Amendment violations, or (2) where the defendant was precluded from using a

corrective process because there was an 'unconscionable breakdown in the [State's] process.'"

*Fernandez v. Sheahan*, No. 12-CV-2735 (WFK), 2015 WL 4771958, at *10 (E.D.N.Y. Aug. 11,

2015) (quoting *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)). As for the first exception, the

path is blocked because "New York State's corrective process for evidence obtained . . . without

probable cause, as set out in Article 710 of the New York Criminal Procedure Law, has been

found facially adequate." *Id.* (citing *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989)).

As for the second exception, Madrid cannot travel down that road either because he has not

experienced an "unconscionable breakdown" in state process to warrant *habeas* relief. With the

assistance of counsel, who has already been found to be otherwise "effective," *Madrid I*, 2014 WL 1338719, at *6-12, the litigation history shows, Madrid unsuccessfully moved to suppress evidence obtained as a result of his arrest. The Appellate Division affirmed that determination, and New York's high court declined further review. Unquestionably, therefore, petitioner was provided the opportunity to, and did fully-avail himself of, New York's more-than-adequate corrective process to review claims that evidence which was the fruit of an illegal seizure was used to convict him. *See McCall v. Capra*, No. 12-CV-6144 (WFK), 2015 WL 1951572, at *4-5 (E.D.N.Y. Apr. 30, 2015).

In any case, even if the Court were to look past Madrid's procedural hurdles, nothing in the record suggests that the state court erred in concluding Madrid was lawfully arrested. Consistent with the Fourth Amendment, New York law permits an officer to "stop a person pursuant to the common-law right to inquire" when there exists "at that moment a founded suspicion that criminal activity is present." *People v. DeBour*, 40 N.Y.2d 210, 215-16, 352 N.E.2d 562, 386 N.Y.S.2d 375 (1976); *see Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)) (an officer may conduct a "brief, investigatory, stop" based on a "reasonable, articulable suspicion that criminal activity is afoot"). Thus, a police officer needs only "a minimal level of objective justification for making the stop" to establish the existence of reasonable suspicion. *Wardlow*, 528 U.S. at 123 (citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989)). Furthermore, an officer has reasonable suspicion to detain an individual where a dispatcher broadcasts a perpetrator's general description and an officer observes, even mistakenly, an individual matching that description in close proximity to the alleged crime. *See Gil v. County of Suffolk*, 590 F. Supp. 2d 360, 367-68 (E.D.N.Y. 2008).

In the present case, as found by the trial court, on September 20, 2003, at approximately 1:40 a.m., NYPD Sergeant Moore, while on patrol, received a radio transmission that four males had been shot by a Hispanic man in dark clothes riding a bicycle at 171st Street and 89th Avenue, which was about ten blocks away from Sergeant Moore's patrol car. *Madrid III*, at *1. Sergeant Moore drove toward the reported location and, at approximately five blocks away from the scene, observed a man matching the transmitted description riding a bicycle "extremely fast" with no one else in the vicinity. *Id.* at *2. Sergeant Moore ordered the bicyclist, who was Madrid, to stop, but he did not. *Id.* Instead, Madrid dropped a black revolver from his waistband, crashed his bicycle, and started running. *Id.* Sergeant Moore pursued on foot and tackled Madrid while his partner recovered the revolver. *Id.* Incident to that arrest, Sergeant Moore searched Madrid and found a butterfly knife and ammunition. *Id.* Sergeant Moore took Madrid to the hospital where the victims of the shooting were being treated, and turned Petitioner over to Detectives Alger and Porter. *Id.* The detectives brought Madrid to one of the victims for a "show up," and the victim identified him as the shooter. *Id.*

On these facts, the trial court, in accordance with Supreme Court precedent, ruled that "given the geographic and temporal circumstances presented, the early morning hour, and the lack of other people in the vicinity, Sergeant Moore had the requisite reasonable suspicion to pursue the defendant, who met the general description of the perpetrator provided in the presumptively reliable radio communication." *Id.* at *9. In addition, the trial court correctly concluded that Madrid's discarding of the gun was not the product of unlawful police conduct, and, that "there is no basis for suppression of the weapon," because Sergeant Moore "observed . . . the weapon in plain view," which "provided the requisite probable cause for the defendant's arrest . . . and permitted both its recovery and the search of [Madrid's] person incident to his

8

arrest." *Id.* at *10. The Second Department affirmed, concluding the pursuit, arrest, and seizure were lawful because Madrid "was found in close temporal and spatial proximity to the scene of the subject crimes, fit the description given in radio transmission, and was fleeing by bicycle as described in that transmission." *Madrid II*, 52 A.D.3d at 531. "Once the police officers saw [him] remove a gun from his clothing, that reasonable suspicion ripened into probable cause for his arrest." *Id.*

The facts are as simple as they are thoroughly compelling. So is the law. New York provides corrective means to vindicate due process claims in cases like this. Madrid had his full and fair opportunity to use them. He lost. Those state court determinations are entitled to AEDPA deference. If the Court were to afford Madrid <u>de novo</u> review, the result would be the same. The writ shall not issue on this ground.

II.     Voluntariness of Petitioner's Post-Arrest Statements

Petitioner argues that he made two post-arrest statements to police which must be suppressed because "he did not knowingly and voluntarily waive his *Miranda* rights." (Am. Pet. at ¶ 13). He submits that, at the time the statements were taken, he lacked the proficiency in English necessary for him to understand and knowingly waive his *Miranda* rights. (Pet.'s Br., ECF No. 24, at 6; Pet.'s Am. Br. at 3-11; Pet.'s Reply Br. at 1-4). He also claims that the interrogating detectives "sought to overbear [his] will," and "take advantage" of him with "trickery" and intimidation, and that his face was bruised at the time of his interrogation, implying some sort of physical coercion. (Pet.'s Am. Br. at 4-5; Pet.'s Reply Br. at 1). With respect to his first statement, Madrid claims his rights were read to him from a card in English, a subject he admits he studied in school, and that the warning was read without the aid of an interpreter. The first statement, which he made in English, he goes on, paved the way for him to

provide a second statement, also involuntarily, in Spanish. (Pet.'s Br. at 6-7; Pet.'s Am. Br. at 4, 7). His reactions to the detectives (indicating that he understood them) were, he says, merely "human reaction[s] to look at something that somebody give[s] to [them]." (Pet.'s Reply Br. at 1-2). He does not deny, however, that he was *Mirandized* in both English and Spanish before making his second, video-recorded statement, but contends that he did not realize the significance of his rights until "the tail end of [his] second statement." (Pet.'s Br. at 7).

The State contends that the finding by the state courts that petitioner's statements were made voluntarily is "not contrary to, or an unreasonable application of, well-settled Supreme Court precedent." (Resp.'s Br. at 24, 28). The state court fact-finding hearing "revealed that . . . [Madrid's] statements were made by him after he had been advised of his *Miranda* rights, in both English and Spanish, which he voluntarily waived on three separate occasions." (*Id.* at 24-25). Furthermore, respondent notes, the Appellate Division "did not unreasonably apply [Supreme Court precedent] when it rejected petitioner's *Miranda* claim because "[t]here is ample record support . . . that petitioner's statements were made after he knowingly and voluntarily waived his *Miranda* rights." (*Id.* at 31). The State points to Detectives Coletta, Porter, and Bencosme's testimony about how they properly *Mirandized* petitioner, had petitioner sign a *Miranda* form, that petitioner acknowledged and understood their questions, that he refused the aid of an interpreter, and that he ultimately provided both written and video-recorded verbal statements. (*Id.* at 31-38).

By now, the basic tenants of the *Miranda* doctrine are well known even among the lay American public. When an individual is taken into custody by law enforcement authorities and is to be subjected to questioning about criminal conduct, in order to protect that individual's privilege against self-incrimination, the familiar *Miranda* warnings must be given. Despite the

ubiquitous recitation of those warnings in popular television and movie productions, the failure

to give these warnings and then obtain a waiver of rights before the custodial interrogation

begins requires, in most situations, the exclusion of any statements obtained. *Miranda*, 384 U.S.

at 478; *Missouri v. Seibert*, 542 U.S. 600, 608, 124 S. Ct. 2601, 159 L. Ed. 2d 643 (2004). In

order to give a valid waiver, an individual must do so voluntarily and knowingly; the waiver

must be "voluntary in the sense that [it] was the product of a free and deliberate choice rather

than intimidation, coercion or deception," and knowingly in that it was "made with a full

awareness of both the nature of the right being abandoned and the consequences of the decision

to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986).

If the totality of the circumstances surrounding the interrogation "reveal both an uncoerced

choice and the requisite level of comprehension," then "a court [may] properly conclude that the

*Miranda* rights have been waived." *Id.* "In analyzing a *Miranda* waiver, courts consider

characteristics of the accused," including "his experience, background, age, education, and

intelligence," along with the conditions of the interrogation, "including police conduct, the

length of the detention, the use of psychologically coercive tactics, and whether the questioning

was repeated or prolonged, or the witness was handcuffed, or deprived of food or sleep."

*Andrango v. Chappius*, No. 14-CV-7716 (JPO), 2015 WL 4039839, at *13 (S.D.N.Y. July 1,

2015) (citing *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991); *Green v. Scully*, 850

F.2d 894, 901-02 (2d Cir. 1988)).

 In reviewing a state court's finding of a valid waiver, the focused question for a federal

*habeas* court is whether the state court unreasonably applied this clearly established Supreme

Court standard. Pointedly, the filing of a federal *habeas* petition is not a green light empowering

the district court to conduct a *de novo* review of the petitioner's claims at his suppression

hearing. *See, e.g., Duncan v. Fisher*, 410 F. Supp. 2d 101, 109 (E.D.N.Y. 2006) ("find[ing] it difficult to agree with the Appellate Division's conclusion that [the petitioner's] pre *Miranda* statements were not incriminating," but nevertheless concluding that "the Appellate Division's decision to affirm [the petitioner's] conviction was not contrary to, or an unreasonable application of, applicable Supreme Court precedent"); *Andrango*, 2015 WL 4039839, at *13. In a nutshell, the resolution of Madrid's *Miranda* claims by the state courts is what is before the district court in the first instance. Here, it cannot be said that the state courts, in finding that Madrid validly waived his *Miranda* rights, used an unreasonable application of controlling Supreme Court precedent.

There is no mystery in the record to be reviewed. The hearing court concluded that Madrid received *Miranda* warnings in both English and Spanish and waived his rights after first having raised questions about those rights. *Madrid III*, at *11. The hearing court found that Madrid's professed language difficulties did not explain his later professed lack of understanding. The court observed that, in his video-recorded statement, Madrid can be seen responding to the assistant district attorney's English questions before receiving a Spanish translation. *Id.* at *11-12. On review, the Second Department found "no basis to disturb the hearing court's determination that the defendant knowingly, voluntarily, and intelligently waived his *Miranda* rights," because "[t]he record supports the court's finding that the defendant had a sufficient command of the English language to appreciate the import of the *Miranda* warnings prior to both of his statements." *Madrid II*, 52 A.D.3d at 531.

The record, more particularly the testimony of Detectives Coletta, Porter, and Bencosme, shows that: Madrid indicated that he spoke English; he said he did not need an interpreter; he did not request medical assistance for his facial injuries; he was not promised anything; he said he

understood the detectives; Detective Coletta read him *Miranda* warnings from a card in English; Detective Coletta provided him a *Miranda* form, which he read and initialed next to each warning; he gave a statement verbally after reviewing the warnings; and Detective Porter reduced his verbal statement to a writing, which Madrid then reviewed and signed. (Suppression Hr'g ("T1"), May 4, 2005, at 6-38; Suppression Hr'g ("T2"), May 25, 2005, at 67-76, 83-99). Moreover, in the second interrogation session, Madrid told the detectives, with Detective Bencosme serving as translator, that he understood some of the rights given in his initial warning, and agreed to have his rights read to him again. (T1 at 23-38). Bencosme also observed Madrid's facial injury, but Madrid did not indicate that he needed medical treatment, nor that he was in pain, nor that he otherwise was not feeling well. (*Id.* at 30-31). After being re-read his rights, Madrid confirmed that he understood them. (*Id.*). On this record, it cannot be concluded that the state court findings ran astray of federal precedent set by the Supreme Court, let alone went off track to any degree that would warrant *habeas* relief.[5]

Furthermore, contrary to Madrid's contention, even if his earlier inculpatory statements were obtained improperly, his subsequent, video-recorded inculpatory statements would not be the inadmissible poisonous fruit of the first interrogation. "[E]ven where a petitioner's initial statement is considered 'incriminating and obtained in violation of the *Miranda* rule,' the violation 'does not render his later, fully warned confessions inadmissible.'" *Andrango*, 2015 WL 4039839, at *14 (quoting *Nova v. Bartlett*, 211 F.3d 705, 708 (2d Cir. 2000) (citing *Oregon v. Elstad*, 470 U.S. 298, 311-14, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985))); *see Parsad v.*

---

[5] In his briefing here, Madrid appears to take exception to the factual findings upon which the state courts made their determination. On AEDPA review, however, those findings are presumed correct unless the petitioner offers "clear and convincing" contrary evidence. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (citing 28 U.S.C. § 2254(e)(1)). Since there is no contrary evidence offered by Madrid, that avenue is foreclosed.

*Greiner*, 337 F.3d 175, 183 (2d Cir. 2003) (holding statements initially obtained in violation of *Miranda* do not taint inculpatory statements obtained following a proper waiver). Rather, "the admissibility of any subsequent statement should turn . . . solely on whether it is knowingly and voluntarily made," in its own right, *Elstad*, 470 U.S. at 309, unless there is evidence that police deliberately sought to "undermine the *Miranda* warnings," by intentionally conducting an un-*Mirandized* interrogation to obtain a full confession, and then gave the *Miranda* warnings before a second interrogation for a reiteration of that confession. *Seibert*, 542 U.S. at 616; *see United States v. Carter*, 489 F.3d 528, 536 (2d Cir. 2007).

There are no such chinks in the armor of the finding by the state courts that, under the totality of the circumstances, Madrid voluntarily waived his *Miranda* rights in providing the second, video-recorded statement to the detectives. The record shows, through the testimony of Detective Bencosme, that Madrid was advised of his rights, this time in Spanish too, before he made his second statement, and that he agreed to have the statement recorded. (T1 at 21-37). There is no record evidence that suggests, even remotely, that the detectives sought to overbear Madrid's will through a two-tiered strategy of first obtaining a statement improperly, which was not the case in any event, and then *Mirandizing* him before a second, repetitive interrogation, that is, after the damage had been done. Instead, it is clear that the hearing court and the Appellate Division had more than a sufficient basis to conclude that Madrid voluntarily waived his *Miranda* rights before giving any statements to the detectives. The state courts applied the controlling Supreme Court precedent to this claim and their determination of it, certainly, was not unreasonable. Federal *habeas* relief is unavailable.

14

III. *Apprendi* Claim

Madrid also challenges his detention on the ground that his sentences for the weapons convictions were imposed consecutively to the sentences imposed upon his conviction for the other offenses charged in the indictment. He argues that "there was no way of determining whether the jury found that [he] possessed the gun for the purpose unrelated to the murder, attempted murder, and assault counts." (Am. Pet. at ¶ 13; Pet.'s Am. Br. at 14-18). As a result, he claims, the consecutive sentencing on the gun counts violated *Apprendi*. (*Id*.). The State parries that Madrid's *Apprendi* claim is "procedurally barred because the state court rejected this claim on the basis of an independent and adequate state procedural ground." (Resp.'s Br. at 47). Elaborating on this point, petitioner failed, respondent argues, to preserve this objection for appellate review. (*Id*. at 47-49). Additionally, respondent asserts that Madrid has not plausibly alleged prejudice or "fundamental miscarriage of justice," other than counsel's refusal to object during the relevant state court proceeding, and, thus, respondent contends, he is not entitled to relief. (*Id*. at 50). Alternatively, respondent argues that Madrid's claim "does not present a federal constitutional issue warranting federal *habeas* review," because *Apprendi* has "no relevance" to a sentencing court's decision to impose consecutive (as opposed to enhanced) sentences, which was authorized in this case. (*Id*. at 47, 50-59).

Federal *habeas* review is surely not available where a claim has already been decided by a state court, and the state court's decision "'rests upon a state-law ground that is independent of the federal question and adequate to support the judgment.'" *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 2439 (2012) (quoting *Cone v. Bell*, 556 U.S. 449, 465, 129 S. Ct. 1769, 173 L. Ed. 2d 701 (2009)). Federal courts may not set aside state court decisions that rest on an adequate and independent state procedural ground unless the petitioner

can show both "cause" and "prejudice," or a fundamental miscarriage of justice. *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 749-50, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Harris v. Reed*, 489 U.S. 255, 262, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989)).

In Madrid's case, the Second Department concluded that the trial court "did not err in directing that the terms of imprisonment imposed for criminal possession of a weapon . . . were to run . . . consecutively to the terms of imprisonment imposed for murder in the second degree, attempted murder in the second degree (two counts), and assault in the first degree (three counts)." *Madrid II*, 52 A.D.3d at 531-32. Substantively, the Second Department found that the record supported the trial court's conclusion "that the weapons possession offenses arose from an act separate from the acts underlying the remaining charges." *Id.* at 532. On top of its substantive determination, the Second Department, on procedural grounds, rejected Madrid's contention that his sentences violated *Apprendi* because that argument was "unpreserved for appellate review." *Id.* In making this determination, the Appellate Division applied, as have other New York courts in legions of other cases, New York's contemporaneous objection rule, codified in New York Criminal Procedure Law ("CPL") § 470.05(2). New York appellate courts routinely rely on CPL § 470.05(2) to deny substantive review of claims that were not sufficiently presented by objection or were otherwise ruled upon by the trial court.

At bottom, then, because of his procedural default, Madrid is barred from obtaining federal *habeas* relief on his *Apprendi* claim, because he did not object at sentencing. There is no dispute that the Second Department rejected Madrid's claim on state procedural grounds. Of equal importance, Madrid has neither proffered any basis for doubting the consistency with which New York courts apply the preservation rule in the *Apprendi* context. Nor, given the

rule's applicability, does he allege any plausible "cause" for failing to preserve the objection, other than the standard ineffectiveness of counsel claim—also unpreserved—or that there was a "miscarriage of justice" that would warrant circumventing New York's contemporaneous objection rule on *habeas* review. It is clear, as analyzed above, that New York has a "firmly established and regularly followed" contemporaneous objection rule, and that federal courts have consistently held this rule to be adequate and independent for the purpose of barring federal *habeas* relief. *See Wainwright v. Sykes*, 433 U.S. 72, 85-86, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977) (contemporaneous objection rule is an adequate and independent state ground); *see also Murray v. Carrier*, 477 U.S. 478, 485-92, 497, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986) (same); *Kozlowski v. Hulihan*, 511 F. App'x 21, 25 (2d Cir. 2013) ("We have previously held that New York's contemporaneous objection rule is 'firmly established and regularly followed,' and, therefore, its application ordinarily constitutes an adequate state-law around for barring federal *habeas* review." (quoting *Downs*, 657 F.3d at 102-104)). Case law expressly provides that *Apprendi* claims are no exception. Courts in this Circuit have consistently held that *Apprendi* claims are barred from *habeas* review when the state appellate court had deemed the claim "unpreserved and without merit." *Bonilla v. Lee*, 35 F. Supp. 3d 551, 573 (S.D.N.Y. 2014) (quoting *People v. Bonilla*, 57 A.D.3d 400, 401, 870 N.Y.S.2d 18, 20 (1st Dep't 2008)); *see Kelly v. Lee*, No. 11-CV-3903 (CBA), 2014 WL 4699952, at *5-6 (E.D.N.Y. Sept. 22, 2014); *Bryant v. Graham*, No. 08-CV-4666 (RJD), 2011 WL 3876972, at *13 (E.D.N.Y. Sept. 1, 2011). With the procedural bar firmly in place, and there being no viable exception permitting the Court to bypass it on AEDPA review, Madrid's *Apprendi* claim is doomed.

Perhaps, save for his last claim, AEDPA's procedural bar would not be the only roadblock to Madrid's winning his *Apprendi* argument. In *Apprendi*, and *Blakely v. Washington*,

542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), the Supreme Court held that it is solely

within the jury's province to determine any fact (aside from a prior conviction) relied upon to

increase the maximum punishment otherwise authorized for a particular offense. *Blakely*, 542

U.S. at 301; *Apprendi*, 530 U.S. at 490. In *Oregon v. Ice,* 555 U.S. 160, 129 S. Ct. 711, 172 L.

Ed. 2d 517 (2009), moreover, the Supreme Court clarified that *Apprendi* does not preclude a

sentencing judge from finding facts relevant to the determination of whether to impose

consecutive rather than concurrent sentences. 555 U.S. at 164-65, 172. With that clarification,

Madrid's substantive argument falls flat. Plainly, as the Second Department observed, the

sentencing court, for the sole purpose of determining whether sentences should properly be

concurrent, found that "the weapons possession offenses arose from an act separate from the acts

underlying the remaining charges." *Madrid II*, 52 A.D.3d at 531-32. In any case, furthermore,

such fact finding does not offend *Apprendi*. *See Oregon*, 555 U.S. at 165. *Apprendi* does not

apply "because the sentencing court did not make factual findings that resulted in a sentence

'*beyond* the prescribed statutory maximum' for each count of conviction." *Olds v. New York*

*State*, No. 06-CV-6308 (ENV), 2010 WL 2265037, at *4 (E.D.N.Y. June 1, 2010) (quoting

*Apprendi*, 530 U.S. at 490).[6] Nothing about Madrid's sentencing on the weapons convictions is

erroneous or objectively unreasonable, and, therefore, the claim affords no basis for relief. Nor

can the failure to pursue that objection serve as a basis for an ineffective assistance of counsel

claim.

---

[6] Generally, under New York law, the following maximum sentences are applicable to Madrid's
violent felony convictions: Class A-1, second-degree murder, life; Class B, attempted second-
degree murder and first-degree assault, 25 years; Class C, second-degree criminal possession of a
weapon, 15 years; Class D, third degree criminal possession of a weapon, 7 years. CPL §§
70.00(2)(a)-(c), 70.02(1)(a)-(c). None of Madrid's sentences exceeded these maximums.

IV.     Ineffective Assistance of Trial Counsel

Petitioner contends that his trial counsel was ineffective for failing to object to the testimony of the medical examiner, Dr. Nields, on *Crawford* grounds. (Am. Pet. at ¶ 13). He maintains that he should not be procedurally barred from obtaining relief on this ground because he "does not understand the nature or legal process," because he "substantial[ly] complied with the procedures governing [C.P.L. §] 440.10 motions," and because he had no right to counsel in collaterally attacking his judgment of conviction. (Pet.'s Supp. Br., ECF No. 25, at 3). He asks for an evidentiary hearing. (*Id.*). Substantively, Madrid argues that the Supreme Court's decision in *Melendez-Diaz*, which was decided after his state appeal was denied, establishes that testimonial evidence, like that provided by Dr. Nields, is inadmissible hearsay. (*Id.* at 4-8).

Respondent argues that petitioner's ineffective assistance/*Crawford* claim is procedurally barred from review "because [he] never fairly presented it in state court." (Resp.'s Br. at 59). In New York, such ineffectiveness claims are preserved by raising them on direct appeal and, respondent offers, since petitioner "cannot show both cause and resulting prejudice for his procedural default, or, alternatively, that there would be a fundamental miscarriage of justice should the Court not review the claim," federal *habeas* review in unavailable. (*Id.* at 59-60). Further, respondent maintains, Madrid has not even alleged cause for his procedural default. This failure, on its own, the State claims, warrants denial of the writ. (*Id.* at 61-65). Even if Madrid had alleged cause, though, the argument continues, his claim would still fail because he cannot show "prejudice by non-review of his claim," nor that there would "be a fundamental miscarriage of justice." (*Id.* at 64-67).

Assuming Madrid could vault over AEDPA's bar, more critically, he would fare no better substantively on his ineffective assistance/*Crawford* challenge. To prevail on an ineffective

19

assistance of counsel claim, a *habeas* petitioner must satisfy the two-part inquiry prescribed in

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). First, he

must show that counsel's representation "'fell below an objective standard of reasonableness,'"

while "bearing in mind that 'there are countless ways to provide effective assistance in any given

case' and that 'even the best criminal defense attorneys would not defend a particular client in

the same way.'" *United States v. Aguirre*, 912 F.2d 555, 556, 560 (2d Cir. 1990) (quoting

*Strickland*, 466 U.S. at 688-89). Second, he must "affirmatively prove prejudice," demonstrating

that "but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Strickland*, 466 U.S. at 693-94.

Madrid cannot meet the first prong of *Strickland* because the unmade *Crawford* objection

to Dr. Nields' testimony upon which the ineffectiveness claim rests clearly has no merit. Dr.

Nields' testimony, the record shows, was based on an autopsy report prepared by a colleague.

On *Crawford* grounds, Madrid maintains, Dr. Nields' testimony was inadmissible hearsay to

which counsel did not object. Madrid references the Supreme Court's determination in

*Melendez-Diaz*, which speaks to the testimonial nature of laboratory reports under *Crawford*.

Specifically, Madrid argues that he had the right to confront the medical examiner who prepared

the report and that his trial counsel's failure to demand it constituted a grave error. Neither

*Crawford* nor *Melendez-Diaz* supplies footing for the objection not made by trial counsel.

After *Melendez-Diaz*, it has been more than well-established that autopsy reports remain

non-testimonial.[7] As such, when otherwise properly received in evidence, an expert, here Dr.

---

[7] Even before *Melendez-Diaz* was decided, when *Crawford*, alone, was controlling law for
Madrid's trial and direct appeal, the testimony petitioner challenges did not violate the
Confrontation Clause of the Sixth Amendment. *See Crawford*, 541 U.S. at 52, 68; *United States
v. Feliz*, 467 F.3d 227, 237 (2d Cir. 2006); *People v. Freycinet*, 41 A.D.3d 731, 731-32, 839
N.Y.S.2d 770 (2007); *Vega v. Walsh*, 669 F.3d 123, 127-28 (2d Cir. 2012) (upholding denial of

Nields, was free to testify about it without the need to call the medical examiner who prepared the report. *United States v. James*, 712 F.3d 79, 89-90, 99 (2d Cir. 2013); *see also Williams v. Illinois*, 132 S. Ct. 2221, 2251-52, 183 L. Ed. 2d (2012) (Breyer, J., concurring) (discussing how autopsy reports must remain outside the purview of the Confrontation Clause). The bottom line is simply this: considering *Crawford* and *Melendez-Diaz*, trial counsel did not err by not objecting to Dr. Nields's testimony. Consequently, that failure to object cannot be the basis for an ineffective assistance of counsel claim. *Habeas* relief on that ground is denied.

<u>Conclusion</u>

For the reasons stated above, Madrid's application for a writ of *habeas corpus* is denied and the petition is dismissed.

Since Madrid has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2).

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal form this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

---

*habeas* application where state appellate court, in a decision pre-dating *Melendez-Diaz*, held that the non-reporting medical examiner was permitted to testify even if *Melendez-Diaz* "clearly established" that autopsy reports are testimonial evidence).

The Clerk of Court is directed to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York
December 1, 2015

/S/ USDJ VITALIANO

ERIC N. VITALIANO
United States District Judge